UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE OLIVERA-BERITAN,<br><br>                              Petitioner,<br><br>v.<br><br>DEBRA ASUNCION,<br><br>                              Respondent. | Case No.:  3:16-cv-2646-CAB-(PCL)<br><br>**ORDER (1) ADOPTING REPORT AND RECOMMENDATION [Doc. No. 25]; (2) REJECTING PETITIONER'S OBJECTIONS [Doc. No. 36]; (3) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS [Doc. No. 1]; (4) DENYING CERTIFICATE OF APPEALABILITY [Doc. No. 34]; (5) GRANTING MOTION TO EXCEED PAGE LIMIT [Doc. No. 36]; and DENYING MOTION FOR HEARING AND APPOINTMENT OF COUNSEL [Doc. No. 16.]** |

Jose Olivera-Beritan ("Petitioner"), is a state prisoner proceeding *pro se* with a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. [Doc. No. 1.] This matter was referred to the United States Magistrate Judge Peter C. Lewis pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Lewis issued a Report and Recommendation ("Report") recommending the Court deny the petition. [Doc. No. 25.] Petitioner filed objections to the Report. [Doc. No. 36.]

Following *de novo* review of Petitioner's claims, the Court finds the Report to be thorough, complete, and an accurate analysis of the legal issues presented in the petition. For the reasons explained below, the Court: (1) adopts the Report in full; (2) rejects the Petitioner's objections; (3) denies the writ of habeas corpus; and (4) denies a certificate of appealability. Additionally, the Court grants the motion to exceed page limits and denies the motion for hearing and appointment of counsel.

## I.    BACKGROUND

### A.   Factual Background

The Report contains an accurate recital of the facts as determined by the California Court of Appeal, and the Court fully adopts the Report's statement of facts. As the magistrate judge correctly notes, the Court presumes state court findings of fact to be correct.

### B.   State Procedural Background

The Report contains a complete and accurate summary of the state court proceedings, and the Court fully adopts the Report's statement of state procedural background.

### C.   Federal Procedural Background

On 2017, Petitioner filed a Petition for a writ of habeas corpus challenging his San Diego County Superior Court convictions. [Doc. No. 1.] Respondent filed an Answer to the Petition, and lodged portions of the state court record. [Doc. Nos. 10, 11.] Petitioner filed a Traverse. [Doc. No. 20.]

On April 5, 2017, Petitioner filed a Motion for Hearing and Appointment of Counsel. [Doc. No. 16.] On November 15, 2017, Petitioner filed a Motion for Certificate of Appealability. [Doc. No. 34.]

On July 24, 2017, Magistrate Judge Peter C. Lewis issued a Report recommending that the petition for writ of habeas corpus and motion for an evidentiary hearing and appointment of counsel be denied. [Doc. No. 25.] On November 16, 2017, after being granted applications for enlargement of time, Petitioner filed his Objections along with a

Motion to Exceed Page Limit. [Doc. No. 36.] Within his objection, Petitioner argues that the magistrate judge erred in finding that the state court did not make an unreasonable application of clearly established federal law or an unreasonable determination of facts in light of the evidence. Because Petitioner has objected to the Report in its entirety, the Court reviews the Report *de novo.* 28 U.S.C. § 636(b)(1)(C); *Holder v. Holder*, 392 F.3d 1009, 1022 (9th Cir. 2004).

## II. DISCUSSION

### A. Legal Standard

The Report sets forth the correct standard of review for a petition for writ of habeas corpus. 28 U.S.C. § 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 403, 123-13 (2000).

Under § 2254(d)(1), a state court's decision is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached by this Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams*, 529 U.S. at 405. A state court's decision is an "unreasonable application" if the application was "objectively unreasonable." *Lockyear v. Andrade,* 538 U.S. 63, 75-76 (2003).

Further, § 2254(d)(2) habeas relief is not available due to a state court's "unreasonable determination of the facts" unless the underlying factual determinations were objectively unreasonable." *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *see*

*also Rice v. Collins*, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable).

**B. Analysis of Petitioner's Claims**

Petitioner raises nine claims in his Petition, all based on purported violations of his federal constitutional rights. Specifically he claims: (1) if the accomplice testimony of Carlos Pena and Guillermo Moreno-Garcia is set aside there is insufficient evidence to support his convictions for attempted kidnapping of Martinez-Barrera, the first degree murders of Ivan Lozano, Jr., Uribe and Marc Leon, Jr. , and the Uribe and Leon kidnappings [Doc. No. 1 at 9-18]; (2) his convictions for murdering Lozano and Leon under the natural and probable consequences theory of aider and abettor liability are invalid following a change in substantive law [*Id.* at 19-28]; (3) his right to confront witnesses was violated by the admission of hearsay testimony from Adrian Gonzalez that David Valencia said Uribe owed Valencia money [*Id.* at 30-34]; (4) his appellate counsel failed to challenge the purposeful racial discrimination he contends occurred in the selection of the jury [*Id.* at 36-37]; (5) he was not a major participant in the murders and is therefore ineligible for sentences of life without the possibility of parole [*Id.* at 38]; (6) he was prejudiced by the denial of his motion for severance of his trial from that of Valencia's and request for dual juries. Relatedly, he asserts that both his trial and appellate counsel were ineffective by failing to raise these arguments at trial or on appeal [*Id.* at 39-45]; (7) the trial court erred in its evidentiary and discovery rulings with respect to the gang enhancement evidence [*Id.* at 46-59]; (8) the trial court imposed restitution fines were made in error because his ability to pay was not considered [*Id.* at 60-65]; and (9) his state habeas petitions were denied on the pretext he did not present a prima facie case for relief [*Id.* at 66-70].

///

///

///

///

**1. Claim One: Insufficient Evidence To Corroborate Accomplice Testimony.**

Petitioner argues that his federal due process rights guaranteed under the Fourteenth Amendment were violated because California Penal Code section 1111[1], which bars conviction of a defendant based on the uncorroborated testimony of an accomplice witness, creates an entitlement to a particular process and resulting liberty interest that cannot be arbitrarily denied. [Doc. No. 1 at 9.] Petitioner asserts that no witnesses, aside from his alleged accomplices, Guillermo Moreno-Garcia and Carlos Pena, identified him or testified as to his role in the first degree murders of Lazano, Uribe and Leon and the kidnappings of Uribe and Leon. [*Id.* at 9-18.] Further, Petitioner claims that he was convicted merely on the evidence of his participation in the Gonzalez-Tostado kidnapping and the evidence of the modus operandi of the Los Palillos, a cell of the Arellano-Felix Organization Mexican drug cartel, of which he was alleged to be a member. In Petitioner's view, this evidence was insufficient to corroborate Moreno-Garcia and Pena's accomplice testimony. [*Id.* at 11.]

As correctly noted by Judge Lewis, there is no clearly established federal law requiring accomplice testimony be corroborated. *See Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000) (holding that although California Penal Code section 1111, prohibits convictions based only on uncorroborated accomplice testimony, "[a]s a statutory rule, and to the extent that the uncorroborated testimony is not 'incredible or insubstantial on its face,' the rule is not required by the Constitution or federal law.") *See also U.S. v. Necoechea,* 986 F.2d 1273, 1282 (9th Cir. 1993) ("The uncorroborated testimony of an accomplice is enough to sustain a conviction unless it is incredible or insubstantial on its face.") Here, Petitioner is not claiming, and the record does not suggest, that the

---

[1] Section 1111 provides: "[a] conviction cannot be had upon the testimony of an accomplice unless it be corroborated by other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable for prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." CAL. PENAL CODE § 1111.

accomplice testimony of Moreno-Garcia and Pena was neither incredible nor insubstantial on its face.

In his objections, Petitioner states that the magistrate judge was mistaken in finding that the evidence presented during the state court trial satisfied the corroboration standard required by that state rule. [Doc. No. 36 at 11-29.] Petitioner argues that the fact that his alias was used in relation to the payment of rent on the Garber Avenue safe house does not establish that he was involved in renting the residence or was living there when the murders were committed, and that even if he was living at the Garber Avenue address "residency does not necessarily establish presence when the crimes occurred." [*Id.* at 15- 18.] However, the Court agrees with Judge Lewis that, assuming *arguendo* Petitioner had a federal due process right to corroboration of accomplice testimony, all of the evidence summarily outlined below satisfies the requirement that corroborative evidence "need only connect the defendant to the crime sufficiently for the Court to conclude the jury reasonably could have been satisfied that the accomplice was telling the truth." *People v. Letner & Tobin*, 50 Cal. 4th 99, 185-186 (2010) (corroborative evidence may be circumstantial, of little weight by itself, and related merely to one part of an accomplice's testimony). Petitioner's related argument that "the evidence of guilt was tainted because it was established by evidence that could not satisfy the reasonable doubt standard under state evidentiary rules and decisional law" is equally without merit. [Doc. No. 36 at 23-24.] The fact that evidence was circumstantial and limited does not mean that guilt was not proven beyond a reasonable doubt. Circumstantial evidence can be used to prove any fact. *See U.S. v. Ramirez-Rodriguez*, 552 F.2d 883, 884 (9th Cir. 1977) ("Circumstantial and testimonial evidence are indistinguishable insofar as the jury fact-finding function is concerned"). In determining whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt, a reviewing court must view the evidence in the light most favorable to the prosecution and presume the trier of fact resolved all conflicts in the evidence in favor of the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Here,

there was sufficient evidence that could lead a rational jury to conclude that Petitioner was guilty of the crimes with which he was charged.

As Judge Lewis's explicitly noted, the accomplice testimony of Moreno-Garcia and Pena regarding Petitioner's role in the kidnappings and murders[2], was corroborated by evidence presented at trial. Notwithstanding the rent payment evidence involving the use of one of Petitioner's alias, evidence that corroborated the accomplice testimony was provided in the form of: (1) spare parts from the car Garcia said Petitioner stole and was used to dump Lozano's body were found in the garage of the Garber Avenue house [RT 9101-12, 13713-26]; (2) telephone calls made from the Garber Avenue house's landline to Petitioner's cell phone [RT 13505]; (3) a photograph of a person who looked like Petitioner using an ATM to withdraw money from Uribe's bank account [RT 12816-20; 14374]; (4) Tostado's bank card was in Petitioner's possession when he was arrested [RT 1410-11, 14344, 14374]; (5) Petitioner was the only Cuban member of Los Palillos at the time of the kidnappings and murders [RT 4849-50, 5303-06, 5026-28, 5313, 14347, 14374]; (6) Gonzalez-Tostado identified Petitioner as the Cuban guard who often used a laptop computer [RT 9648-50]; (7) a laptop seized from the Point Dume residence contained photographs showing Petitioner: a) at the Garber Avenue residence on a laptop; b) standing next to his Chevrolet Equinox outside the Point Dume house where he was arrested. [RT 13214-13220, 12816-20]; (8) the Point Dume house was identified by Jorge Garcia Vazquez ("Kilino"), one of the Garber Avenue kidnap victims, as the residence used in his kidnapping. [RT 13844-48, 13906-19]; (9) Garber Avenue was also identified by Petitioner's girlfriend as the abode where the wife of a high ranking member of Los Palillos found a bundle of cash [RT 13270-75]; (10) when Jorge Rojas Lopez and Rojas-Gamez were arrested they were in possession of marked bills from the ransom money [RT 11031-32]; (11) human remains were found at the Imperial Beach ranch exactly where Pena said

---

[2] *See* Report [Doc. No. 25 at 49-50] for an accurate summary of the accomplice testimony.

he had dumped the barrels with the remains of Uribe and Leon inside [RT 12837-927]; and (12) Lozano's body had Taser injuries and a Taser gun, with Petitioner's DNA on it was found in the couch on which Petitioner was sitting when the FBI raided the Point Dume house. Records illustrate that the Taser gun was discharged 5 times on the day Lozano was abducted, 8 times on the day Uribe and Leon were abducted, and several times while Uribe and Leon were being held at the Garner Avenue residence [RT 9208-20, 13007-36.].

Further evidence that corroborates the accomplice testimony is provided in the testimony of Vazquez, Gonzalez Tostado and Hernandez. Vasquez testified that one of his captors was Cuban and that he was shot with a Taser and identified the Garber Avenue house as the place where he was held. [RT 4244, 4328-36, 4403.] He also testified that one of the men who guarded him was a foreigner with a Cuban or Venezuelan accent who was called "El Cubano," and Gonzalez-Tostado testified that one of his guards was called "Asere," nicknames by which Petitioner was known. [RT 1609-1610, 9639-41, 9724.] Additionally, Lourdes Hernandez testified that Martinez was lured to the Briarwood apartment complex by Juan Laureano-Arvizu so that he could be abducted by some of the members of Los Palillos disguised as police officers and that, when the plan went awry, the kidnappers drove to the Garber Avenue safe house. [RT 3574-617.]

Thus, the jury was presented with not only the accomplice testimony of Moreno-Garcia and Pena, but also corroborative evidence that Petitioner participated in the attempted kidnapping of Martinez-Barrera by helping plan his abduction, acting as lookout, and preventing Martinez-Barrera's escape, sufficient to support the jury's guilty verdicts. *See Coleman v. Johnson,* 566 U.S. 650, 654 (2012) ("Under *Jackson,* evidence is sufficient to support a conviction, if 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (citing *Jackson,* 443 U.S. at 319) (emphasis in original)). Sufficient evidence was also presented that Petitioner directly participated in the kidnappings of Lozano, Uribe and Leon, directly participated in the murders of Uribe and Leon and facilitated the murder of Leon to support the jury's guilty verdicts. *See Jackson,*

443 U.S. at 319 (juries have broad discretion in deciding what inferences to draw from the evidence presented at trial, with the jury only being required to "draw reasonable inferences from basic facts to ultimate facts."). Therefore, it cannot be said that the jury's findings were "so insupportable as to fall below the threshold of bare rationality." *Coleman,* 566 U.S. at 658. Accordingly, the Court rejects the Petitioner's objections, adopts the Report and denies the petition as to this claim.

**2. Claim Two: Convictions Based on Natural and Probable Theory of Aider and Abettor Liability.**

Petitioner argues that his convictions for murdering Lozano and Leon under the natural and probable consequences theory[3] of aider and abettor liability are invalid following the change in substantive law set forth in *People v. Chiu*, 59 Cal. 4th 155 (2014) [Doc. No. 1 at 19-28][4]. Petitioner contends that the holding in *Chiu,* which "took the natural and probable consequence theory off the table entirely as a ground for a first-degree murder conviction," applies with equal force when vicarious liability is based on a conspiracy theory. [*Id.* at 22-24.] Further, he asserts that because such a theory was used as a basis for his convictions two of his first-degree murder convictions must be reversed. [*Id.*] But, as Judge Lewis correctly noted, Petitioner has cited no authority for the proposition that *Chiu* has been extended to include situations where the jury was instructed on the natural and probable consequences theory of conspiracy *and* that the murder must be willful, deliberate and premeditated. *See Chiu*, 59 Cal. 4th at 166 (holding that a defendant cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine). In his objections, Petitioner states that the magistrate

---

[3] An aider and abettor is guilty not only of the intended crime, but also "for any other offense that was a 'natural and probable consequence' of the crime aided and abetted." *People v. McCoy,* 25 Cal. 4th 1111, 1117 (2001).

[4] Petitioner states that "the jury was instructed on the alternate first-degree and felony murder theories of liability; they were also instructed on direct perpetrator, aider and abettor , and conspirator theories of liability and the applicability of the natural and probable consequences doctrine to the latter two vicarious liability theories." [Doc. No 1 at 21.]

judge erroneously distinguished applying the doctrine under conspiracy liability versus under an aiding and abetting theory of liability and used the distinction to preclude application of *Chiu* to conspiracy prosecutions. [Doc. No. 36 at 30.]

As accurately reported by Judge Lewis, Petitioner has not shown that an instruction on a natural and probable consequence theory of aiding and abetting liability, rather than an instruction on the natural and probable consequences theory of conspiracy liability, was presented to the jury.[5] [Doc. No. 25 at 58.] *See Hedgpeth v. Pulido,* 555 U.S. 57, 58 (2008) (federal constitutional error occurs when a general verdict is returned by a jury instructed on two theories of guilt, one of which was legally correct and one legally incorrect, but only when it is impossible to determine which theory the jury relied upon). Petitioner's jury was instructed on both first-degree murder and felony murder, and as Judge Lewis explained, the *Chiu* court expressly noted its holding "does not affect or limit an aider and abettor's liability for first degree felony murder under section 189 [of the Penal Code]." *Chiu*, 59 Cal. 4th at 166. Therefore, not only is Petitioner's reliance on *Chiu* misplaced, he has also failed to demonstrate that his jury was instructed on an invalid theory of liability, and as a consequence, has not demonstrated the existence of a federal constitutional error. The conviction for aiding and abetting murder during the commission of a kidnapping was sufficient to preclude relief under *Chiu*.

Furthermore, Judge Lewis' was correct in his analysis that even if the jury was instructed on an invalid theory along with valid theories, and assuming this instruction amounted to federal error, any such error was harmless because it did not have "a substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (a federal habeas court must determine if it is harmless by examining whether the flaw in the instructions "had a substantial and injurious effect or influence in determining the jury's verdict.") Upon consideration of the fact that

---

[5] *See* Report at pages 55-57 for a recitation of the instructions presented to the jury regarding the first degree murder and felony murder theories.

the jury convicted Petitioner of the kidnappings of Lozano, Uribe and Leon, returned true findings as to the special circumstances allegations that all three murders were committed during the course of a kidnapping, and in light of the ample evidence presented to the jury that supports a finding that Petitioner directly aided and abetted[6] the willful, deliberate and premeditated murder of Lozano and Leon (a theory permissible under *Chiu*), the Court is not left "in grave doubt about the likely effect of an error." *Padilla v. Terhune,* 309 F.3d 614, 621-22 (9th Cir. 2002) ("an error is harmless unless the record leaves the conscientious judge in grave doubt about the likely effect of the error . . . (i.e.,) that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.") (internal quotation marks and citations omitted). Accordingly, the Court rejects the Petitioner's objections, adopts the Report and denies the petition as to this claim.

### 3. Claim Three: Admission of Hearsay Evidence.

Petitioner argues his right to confront witnesses was violated by the admission of hearsay testimony from Adrian Gonzalez. [Doc. No. 1 at 30-34.] Gonzalez testified that David Valencia said Uribe owed Valencia money and that, when Uribe paid his debt to Valencia, Valencia would, in turn, pay Gonzalez the $9,000.00 he owed in back rent. [*Id.* at 30]. Petitioner asserts the testimony of Gonzalez that Valencia said Uribe owed him $70,000 was "being offered as proof of Valencia's belief and the fact that his belief motivated him to participate in a crime against Uribe" and that this was inadmissible hearsay. [*Id.* at 31.] However, as correctly recited by the magistrate judge, "[t]he Supreme

---

[6] Under California law, an aider and abettor must "act with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." *People v. Beeman,* 35 Cal. 3d 547, 560 (1984). *See also Chiu,* 59 Cal. 4th at 166-67 ("Aiders and abettors may still be convicted of first degree premeditated murder based on direct aiding and abetting principles. Under those principles, . . . [a]n aider and abettor who knowingly and intentionally assists a confederate to kill someone could be found to have acted willfully, deliberately, and with premeditation, having formed his own culpable intent. Such an aider and abettor, then, acts with the mens rea required for first degree murder. (*Id.*)

Court has made very few rulings regarding the admission of evidence as a violation of due process…, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough,* 568 F.3d 1091, 1101 (2009). Therefore, absent a clearly established federal law, the Court cannot conclude that the state court's ruling as to the evidentiary issues was an unreasonable application.

Petitioner's related argument that Valencia's statements to Gonzalez were testimonial in nature and were considered by the jury in convicting Petitioner of "counts 5, 6 and 5 [sic]" is equally unpersuasive. [Doc. No. 1 at 34.] As Judge Lewis correctly noted, the Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1998). Notwithstanding the guarantees offered by the clause, "where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial" is permitted and its protections do not extend to non-testimonial evidence. *Maryland v. Craig*, 497 U.S. 836, 847-48 (1990); *Davis v. Washington*, 547 U.S, 813, 821 (2006). For example, if a witness is unavailable and there was a prior opportunity for cross-examination, introduction of the witness's prior testimonial statement is permitted and does not violate a defendant's confrontation rights. *Crawford v. Washington*, 541 U.S. 36, 68 (2004).[7]

In his objections, Petitioner contends that the magistrate judge erroneously determined: (1) Valencia's statements were not testimonial hearsay; (2) Valencia's testimony was insignificant in light of other evidence; and (3) any error in admitting Valencia's testimony did not have a substantial and injurious effect or influence on the jury's verdict. [Doc. No. 36 at 36, 37.] The Court agrees with Judge Lewis that the statement Valencia made to his landlord about paying his past due rent does not amount to

---

[7] But, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford,* 541 U.S. at 51.

testimonial evidence. *See Crawford,* 541 U.S. at 51-52 (testimonial statements are the functional equivalent of court testimony, and include affidavits, depositions, custodial examinations, prior testimony, confessions and pretrial statements that the declarant would reasonably expect to be used prosecutorially.") Valencia's statements to Garcia were by their nature non-testimonial because Valencia could not have reasonably anticipated that casual remarks to a landlord would later be used as evidence against himself and his accomplices. Further, the statement is not accusatory, was not made in a formal setting and bears no resemblance to the "various formulations of th[e] core class of testimonial statements" provided in *Crawford. See Id.* Thus, the trial court did not violate Petitioner's federal constitutional right to confrontation by admitting Gonzalez's testimony regarding the conversation between himself and Valencia.

Moreover, even if the admission of Valencia's statements through Gonzalez did violate Petitioner's rights under the Confrontation Clause, Judge Lewis was correct in finding Petitioner would still not be entitled to habeas relief. "A showing of constitutional error under the Sixth Amendment only merits grant of the petition for habeas corpus if the error was not harmless, that is, if it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Holley v. Yarborough,* 568 F.3d at 1100 (citation omitted). The admission of Gonzalez's testimony was harmless under any standard of prejudice because it is inconsequential in light of the other evidence presented to support the role Valencia played in the crimes, and did very little if anything to incriminate Petitioner. Additionally, in light of the fact that the jury was instructed that certain evidence was admitted only against certain defendants and the insignificance of the challenged testimony, nothing in the record suggests that the alleged error rises to the level necessary to warrant habeas relief. *See Brecht* 507 U.S. at 628-29. Accordingly, the Court rejects the Petitioner's objections, adopts the Report and denies the petition as to this claim.

### 4. Claim Four: Racial discrimination and ineffective assistance of appellate counsel.

Within Claim 4, Petitioner makes two arguments. First, he contends that purposeful racial discrimination occurred in the selection of the jury; his defense counsel made a prima facie showing of racial discrimination after the prosecutor dismissed potential jurors 49, 96, 118, 137 who were all African-American jurors; and the trial judge erred in finding that no prima facie showing had been made. [Doc. No. 1 at 36-37.] Second, Petitioner posits that his appellate counsel's failure to raise his racial discrimination/Batson-Wheeler claim on appeal and his failure to order the record of the voir dire and jury selection process, rendered counsel's assistance ineffective. [*Id.*.]

A single strike of an African-American juror for racial reasons violates the equal protection clause. *Batson v. Kentucky*, 476 U.S. 79, 95-96 (1986). As Judge Lewis accurately recounted, when the State's removal of a juror is challenged under *Batson*, a three step process is performed: (1) defendant must make out a prima facie case by showing that the totality of the relevant facts give rise to an inference of discriminatory purpose; (2) upon such a showing the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strike; and (3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination. *Johnson v. California*, 545 U.S. 162, 168 (2005). "[A] defendant satisfies the requirements of *Batson's* first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Id*. at 170. The transcript of the *Batson* motion hearing clearly illustrates that defense counsel simply pointed out that the prosecutor had removed four African-American jurors from the panel, but failed to show or allege that the removal was done for a discriminatory purpose, that it had a discriminatory impact or indicate the total number of African-American potential jurors in the venire or on the panel. [Doc. No. 11-110 at 221-222.] Furthermore, the record indicates that the Prosecutor did not disproportionately use his preemptory challenges to dismiss minority jurors; he used 25 preemptory

challenges, four of which were used to excuse African-Americans, [*Id.*] – meaning only 16 percent of his challenges were used to excuse minority jurors.

Notwithstanding Petitioner's arguments to the contrary in his objections [Doc. No. 36 at 40-44], defense counsel did not provide any support for his *Batson* motion and, as a consequence, did not satisfy the first step of making a prima facie case. *See Johnson,* 545 U.S at 168 ("defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.") (internal quotation marks and citation omitted); *Washington v. Davis*, 426 U.S. 22, 29-42 (1976) (an act challenged solely because it has a racially disproportionate impact "without regard to whether it reflects a racially discriminatory purpose" is not unconstitutional); *Cooperwood v. Cambra*, 245 F.3d 1042, 1048 (9th Cir. 2001) (the fact that African-Americans remained on the panel when the challenges were made generally weighs against an inference of discrimination.) Thus, the Court agrees with Judge Lewis that the trial court's rejection was not objectively unreasonable nor an unreasonable determination of the facts. *See Rice*, 546 U.S. at 338-39 (state court factual findings in the *Batson* context are presumed correct, and a federal habeas "petitioner has the burden of rebutting the presumption by 'clear and convincing evidence'") (quoting 28 U.S.C. § 1154(e)(1). Accordingly, the Court rejects the Petitioner's objections, adopts the Report and denies the petition as to this portion of the fourth claim.[8]

As to the ineffective assistance of appellate counsel portion of the claim, a petitioner making such a claim must show that counsel failed to find non-frivolous arguable issues and, but for counsel's failure to file a merits brief on the issue, the petitioner would have prevailed on his appeal. *Smith v. Robbins,* 528 U.S. 259, 288 (2000). (Applying standard laid out in *Strickland v. Washington,* 466 U.S. 668, 687 (1994), to challenge counsel's

---

[8] Additionally, Judge Lewis was correct when he noted that Petitioner, "failed to allege in state court, as he has here, how the voir dire transcripts support his claim." [Doc. No. 25 at 73.] Petitioner could have, but did not, provide the Court with information regarding what was contained in the voir dire transcripts.

effectiveness on appeal). Failure to raise an argument on appeal does not constitute ineffective assistance because counsel has discretion to decline to raise arguments that he/she foresees has little or no likelihood of success. *Smith*, 528 U.S. at 288; *Wildman v. Johnson¸* 261 F.3d 832, 840 (9th Cir. 2001) ("appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal.") Rather, to successfully make an ineffective assistance of counsel claim Petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland,* 466 U.S. at 687. As Judge Lewis explained, this requires Petitioner demonstrate "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and the deficient performance deprived defendant of "a fair trial, a trial whose result is reliable." *Id.* at 687. Further Petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Here, Petitioner has not overcome *Strickland's* high bar and demonstrated that his appellate counsel's conduct regarding the *Batson* motion and voir dire transcripts was unreasonable. Neither has Petitioner demonstrated that, even assuming the challenged conduct was unreasonable and more than a strategic decision, he suffered sufficient prejudice to warrant setting aside his sentences. Accordingly, the Court rejects the Petitioner's objections, adopts the Report and denies the petition as to this portion of the fourth claim.

### 5. Claim Five: Ineligibility for sentences of life without the possibility of parole.

Petitioner argues that because he was not a major participant in the murders and he is, therefore, ineligible for sentences of life without the possibility of parole. [Doc. No. 1 at 38.] Major participation in a criminal enterprise occurs when a defendant is "actively involved in every element" of the underlying crimes "and was physically present during the entire sequence of criminal activity culminating in the murder." *See People v. Banks,* 61 Cal. 4th 788, 802 (2015). Ultimately, the question is "whether the defendant's participation in criminal activities known to carry a grave risk of death was sufficiently

significant to be considered major." *Banks,* 61 Cal. 4th at 803 (identifying a handful of factors that may be considered in order to evaluate whether a defendant is sufficiently culpable to warrant the penalty awarded[9]) (internal quotation marks and citations omitted).

As Judge Lewis correctly surmised, a de novo review of the record[10] illustrates that a myriad of evidence was presented to the jury regarding Petitioner's participation in the crimes that is sufficient to support the life sentences without parole imposed. For example, evidence was presented that Petitioner deliberately chose to join the Los Palillos crew, participated in at least one of the crew's kidnappings, lived at and rarely left the safe house where the three murders were committed, purchased the supplies necessary to concoct the acid mix used to dissolve the bodies of Leon and Uribe, guarded all three victims leading up to their murders, kicked Uribe and Leon while they were being strangled to death, participated in the barbeque organized to mask the smell of the disintegrating bodies, cleaned and sterilized the residence after the murders, participated in the dumping of Lozano's body, and a Taser gun that was discharged on the dates of the kidnappings and murders tested positive for Petitioner's DNA. Furthermore, the kidnappings and murders of Uribe and Leon occurred after Petitioner had already participated in the earlier Lozano kidnapping and murder. *See Banks,* 61 Cal. 4th at 804-805. In light of this evidence a reasonable jury could infer that Petitioner's own actions and inactions caused him to be a

---

[9] Factors to be considers include: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inactions play a particular role in the death? [footnote omitted] What did the defendant do after lethal force was used?" *Banks,* 61 Cal. 4th at 338-39.

[10] As noted by the magistrate judge, owing to Petitioner's failure to exhaust the state judicial remedies, and because any attempt to seek further post-conviction relief would meet with the imposition of a procedural bar, de novo review of this claim is appropriate. *See Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005) ("A habeas petitioner who has defaulted his federal claims in state court meets the *technical* requirements for exhaustion; there are no state remedies any longer 'available' to him.") (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

major participant in the kidnappings and deaths of Lozano, Uribe and Leon and that he acted with reckless indifference to human life. Accordingly, the Court rejects the Petitioner's objections, adopts the Report and denies the petition as to this claim.

### 6. Claim Six: Denial of requests to sever trials and for separate juries.

Petitioner argues he was prejudiced by the denial of his motion for severance of his trial from that of Valencia's and his request for dual juries. [Doc. No. 1 at 39-44.] Further, he claims that the court's limiting instruction regarding evidence admitted against his co-defendant Valencia was "wholly inadequate to prevent the jury from applying the evidence against Petitioner." [*Id.* at 40.] Relatedly, Petitioner asserts that both his trial and appellate counsel were ineffective by failing to raise these arguments at trial or on appeal. [*Id.* at 45.][11]

As Judge Lewis correctly noted, a fundamentally unfair state criminal trial can rise to the level of a federal due process violation. *California v. Trombetta,* 467 U.S. 479, 485 (1984) ("Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness."). However, it has not been clearly established whether and to what to degree a failure to sever charges rises to the level of a federal due process violation. *See, e.g., Collins v. Runnels*, 603 F.3d 1127, 1132-33 (9th Cir. 2010) (concluding that Supreme Court's holdings in *U.S. v. Lane,* 474 U.S. 438 (1986) and *Zafiro v. U.S.,* 506 U.S. 534 (1993) "establish a constitutional standard binding on the states requiring severance")[12]. Accordingly, it would be improper for the Court to conclude that the state court's determination of these portions of

---

[11] Petitioner does not provide specific objections as to the sixth claim.

[12] In *Lane,* the Supreme Court concluded that when it comes to federal defendants "improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial. 474 U.S. 438, 446 n.8. In *Zafiro* the Supreme Court held that under Federal Rule of Criminal Procedure 14(a) severance is not automatically necessary where co-defendants present mutually antagonistic defenses. 506 U.S. 534. Moreover, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.* at 540

Petitioner's sixth claim were contrary to, or involved an unreasonable application of clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1).

Moreover, even assuming clearly established federal law provides that a failure to sever trials or charges can rise to the level of a federal due process violation, Judge Lewis was correct that Petitioner has not demonstrated that the appellate court's adjudication of his claim resulted in an objectively unreasonable application of that principal. Apart from making conclusory speculations, Petitioner has made no showing that the evidence against Valencia tainted him and downplays the fact that the jury was presented with evidence that Petitioner guarded the victims, participated in their kidnappings, assisted in their murders, facilitated the disposal of the bodies and aided in the post-murder clean-up. Accordingly, the Court adopts the Report and denies the petition as to this portion of the sixth claim.

Similarly, Petitioner has simply made conclusory statements that the jury failed to consider the evidence against each defendant separately and that because the jury heard evidence of Valencia's role in the Gonzalez-Tostado kidnapping while not being informed of Valencia's guilty plea on counts 8 and 9 related to the crime it was "left to speculate as to why Valencia was not on trial." [Doc. No. 1 at 41.] Therefore, Petitioner contends that it was "reasonably likely that the jury's confusion prevented it from making a reliable judgment about Petitioner's guilt or innocence." [*Id.*] But, absent evidence that the jury misused the Valencia evidence to convict Petitioner, the jury is presumed to have faithfully followed the limiting instructions provided by the trial judge. *Weeks v. Angelone,* 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."); *U.S. v. Olano,* 507 U.S. 725, 740 (1993). Accordingly, the Court adopts the Report and denies the petition as to this portion of the sixth claim.

As to the ineffective assistance of trial counsel portion of the claim, the Court agrees with Judge Lewis that Petitioner has failed to allege facts which would, if true, establish prejudice arising from trial counsel's failure to seek severance of the trial or the counts against him. *Strickland,* 466 U.S. at 687 (to successfully make an ineffective assistance of counsel claim Petitioner must show that counsel's performance was deficient and that the

deficiency prejudiced the defense). Moreover, as the superior court noted "[c]ontrary to petitioner's assertion, his trial counsel filed a motion for severance of the jury trial from co-defendant Valencia … [and] sought bifurcation of trial on the gang enhancement allegations prior to trial." [Doc. No. 11-97, Lodgment 17, at 7-8.] As to the ineffective assistance of appellate counsel portion, as discussed above, a petitioner making such a claim must show that counsel failed to find non-frivolous arguable issues and, but for counsel's failure to file a merits brief on the issue, the petitioner would have prevailed on his appeal. *Smith,* 528 U.S. at 288. Here, Petitioner has not overcome *Strickland's* high bar and demonstrated that appellate counsel's decision to not appeal the trial court's denial of the motions to sever Petitioner's trial and empanel dual juries, was unreasonable or that Petitioner suffered sufficient prejudice to warrant setting aside his sentences. Accordingly, the Court adopts the Report and denies the petition as to this portion of the sixth claim.

### 7. Claim Seven: Admission of evidence regarding gang membership.

Petitioner claims the trial court erred in a number of its evidentiary and discovery rulings with respect to the gang enhancement evidence. [Doc. No. 1 at 46-59.] Petitioner argues that the testimony of Agents Bird, Giboney and Weiler was prejudicial and irrelevant because it resulted in the admission of unreliable and pseudo-scientific "expert" opinion evidence regarding the Los Palillos cell and his affiliation to it. [*Id.*] In his objections Petitioner focuses on the testimony of Agent Giboney and, relying on *People v. Sanchez,* 63 Cal. 4th 665 (2016)[13], contends that he did in fact identify the testimonial

---

[13] In this 2016 decision, the California Supreme Court held that a gang expert may testify about his general knowledge but not about case-specific facts of which he has no personal knowledge, but they can "rely on background information accepted in their field of expertise . . ., [t]hey can rely on information within their personal knowledge, [] they can give an opinion based on a hypothetical case-specific facts that are properly proven . . . ., [and they] may still rely on hearsay in forming an opinion, and may tell the jury in general terms that he did so." 63 Cal. 4th at 685-86. The *Sanchez* court explained that when a gang expert "relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay." *Id.* In order to shed some light on its holding, the *Sanchez* court provided a handful of examples to illustrate the difference between background information versus case specific facts, for example:

nature of Agent Giboney's gang expert opinion testimony, and the admission of this testimonial hearsay violated the Confrontation Clause. [Doc. No. 36 at 48-57.] But, the *Sanchez* decision is not determinative because its ruling does not constitute "clearly established Federal law, as determined by the Supreme Court of the United States" and is not binding on this Court. *See Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002) ("[D]ecisions of [the United States Supreme] Court are the only ones that can form the basis justifying habeas relief . . . .").

Further, much of Petitioner's argument relies on alleged violations of California Evidence Code, which cannot be the basis of a federal habeas claim. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("federal habeas relief does not lie for errors of state law"). Additionally, Agent Bird's testimony regarding the patterns and practices of drug cartels is the type of propensity evidence the Supreme Court has reserved ruling on; therefore it cannot be said that there is "clearly established federal law" recognizing such a claim. *See Id.* at 75 n. 5 (the Supreme Court expressly reserved consideration of the broader question of "whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence" to demonstrate a defendant's propensity to commit the charged offense). *See also Alberni v. McDaniel*, 458 F.3d 860, 866 (9th Cir. 2006) (the court held that it could not conclude that the Nevada Supreme Court "acted in an objectively unreasonable manner in concluding that the propensity evidence introduced against [defendant] did not violate due process, given that *Estelle* expressly left this issue an "open

---

That an associate of the defendant had a diamond tattooed on his arm would be a case specific fact. The fact could be established by a witness who saw the tattoo, or by an authenticated photograph. That the diamond is a symbol adopted by a given street gang would be background information about which a gang expert could testify. The expert could also be allowed to give an opinion that the presence of a diamond tattoo shows that person belongs to the gang.

*Id.* at 677. *See also People v. Mearz*, 6 Cal. App. 5th 1162, 1174-75 (2016) (following *Sanchez*, under state law gang expert "plainly permitted to testify to non-case specific general background information about gang, including "its primary activities" and "its pattern of criminal activity," even if such testimony was "based on hearsay sources like gang members and gang officers.")

question."). Similarly, Agent Giboney's testimony regarding the membership of Los Palillos and the predicate crimes they committed falls into the same propensity evidence category. Likewise, the testimony of Agent Weiler regarding Petitioner's membership in a Cuban drug gang in Kansas City is also propensity evidence and thus cannot form the basis of a habeas claim. In sum, the right Petitioner asserts "has not been clearly established by the Supreme Court, as required by AEDPA." *Alberni,* 458 F.3d at 866 (2006). Furthermore, Petitioner has made no showing that the state court's alleged evidentiary errors "so fatally infected the proceedings as to render them fundamentally unfair." *Jammal v. Van De Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

Also without merit is Petitioner's argument that the expert testimony of Agent Giboney violated his right to confront the witnesses upon whom the experts relied. As explained by the magistrate judge, where, as here, an expert is subject to cross-examination regarding his opinion, the expert is permitted to explain the facts on which his opinion is based without violating the Confrontation Clause. *Williams v. Illinois,* 567 U.S. 50, 58 (2012) ("When an expert testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth. Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause.") Additionally, the jury was able to judge the credibility of Agent Giboney's testimony in light of the sources he described in his testimony and upon which he relied, and weigh it in conjunction with additional evidence presented. While some portions of Agent Giboney's testimony were case specific, this testimony was not barred under state or federal law because he was present during the interviews of Moreno and Pena, he had personal knowledge of the facts, and was subject to cross-examination at trial. Equally unavailing is Petitioner's contention that the jury might have been confused by the dual testimony of Agent Giboney as an expert and as an investigator. The jury was given a number of limiting instructions regarding expert and gang evidence and Petitioner has failed to present any evidence that the jury did

not faithfully follow the instructions provided by the trial judge. *Weeks,* 528 U.S. at 234 ("A jury is presumed to follow its instructions."); *Boyde v. U.S.*, 494 U.S. 370, 378 (1990) (following the familiar rule that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.") (internal quotation marks and citations omitted).

Petitioner also challenges the admission of testimony from informant G. Moreno regarding the Balitas and Kilino crimes as being illustrative of predicate gang activities, the modus operandi of Los Palillos, motive, and conspiracy. But, as Judge Lewis correctly noted Petitioner has failed to show that the state court adjudication of the claim involves an unreasonable application of clearly established federal law. *See Holley,* 568 F.3d at 1101 (acknowledging that the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.").

In light of the above, the Court rejects the Petitioner's objections, adopts the Report and denies the petition as to this evidentiary rulings portion of this claim.

As to the trial court's discovery orders, Petitioner claims that "the defense was forever playing catch-up." [Doc. No. 1 at 55.] Specifically, Petitioner argues that: the discovery protective orders put in place early in the proceedings prevented the defense from acquiring the grand jury transcripts, police reports, and witness statements; the last minute production of evidence on the eve of trial violated Petitioner's due process rights; Petitioner and Valencia were treated differently than cooperating witnesses Moreno Garcia and Pena, and Petitioner's trial notes were confiscated from his prisoner cell and reviewed by the Prosecutor. [*Id.* at 56-57.] Although the Report is silent as to this portion of the claim, the Court has reviewed Petitioner's arguments regarding the discovery orders and finds they were addressed by the trial court and reasonably denied. [Doc. No. 19 at 5-6.] Furthermore, to the extent Petitioner is claiming a violation of state discovery law, he is not entitled to federal habeas relief. *Estelle,* 502 U.S. at 67-68 (a violation of state

evidentiary or discovery law cannot form the basis of federal habeas relief).  Accordingly, the Court adopts the Report and denies the petition as to this portion of the seventh claim.

### 8. Claim Eight: Restitution fine.

Petitioner argues the restitution fines imposed by the trial court were made in error because his ability to pay was not considered.  [Doc. No. 1 at 60-65.][14]  Petitioner asserts the $1,000 restitution and $2,407.71 compensation he was ordered to pay is an excessive fine which violates the Eight Amendment.  [*Id.* at 60-63.]  Further, Petitioner contends that his trial court rendered ineffective assistance by failing to object to the fine and present evidence of his inability to pay and that his appellate counsel also provided ineffective assistance of counsel by failing to raise this issue on appeal. [*Id.* at 63-65.]  But, as Judge Lewis correctly noted, this Court lacks jurisdiction to consider Petitioner's claim because "§ 2254 does not confer jurisdiction over a state prisoner's in-custody challenge to a restitution order imposed as part of a criminal sentence."  *Bailey v. Hill*, 599 F.3d 976, 979-80 (9th Cir. 2010).  Additionally, as the magistrate judge correctly reported neither trial nor appellate counsels' failure to challenge the order rises to the level necessary to successfully make an ineffective assistance of counsel claim.  *See, e.g., Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) (appellate counsel is under no obligation to raise every weak issue, in fact "the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.")*; Wildman* 261 F.3d at 840 ("appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal.").  Accordingly, the Court adopts the Report and denies the petition as to this claim.

---

[14] Petitioner does not set forth any particular objection to this section of the Report.

**9. Claim Nine: Arbitrary and perfunctory denial of habeas corpus relief to indigent pro se petitioners.**

Petitioner claims his state habeas petitions were denied on the pretext he did not present a prima facie case for relief. [Doc No. 1 at 66-70]. Petitioner asserts that "the petitions filed in the respective state courts clearly stated a prima facie case for relief and alleged facts which if proven to be true, would require relief under both state and federal law and rules of procedure." [*Id.* at 66.] As Judge Lewis explained, to the extent Petitioner is contending that 28 U.S.C. § 2254(d) is unconstitutional, such a claim has been rejected by the Ninth Circuit. *Crater v. Galaza*, 491 F.3d 1119, 1126-30 (9th Cir. 2007). Furthermore, as set forth above and in the Report, there is no basis for granting federal habeas relief based on the state court adjudication of his claims. Accordingly, the Court adopts the Report and denies the petition as to this claim.[15]

**C. Certificate of Appealability**

A petitioner complaining of detention arising from state court proceedings must obtain a certificate of appealability to file an appeal of the final order in a federal habeas proceeding. 28 U.S.C. § 2253(c)(1)(A) (2007). The district court may issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). To make a "substantial showing," the petitioner must "demonstrat[e] that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable[.]' " *Beaty v. Stewart*, 303 F.3d 975, 984 (9th Cir.2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Petitioner has not made a "substantial showing" as to any of the claims raised by his petition, and thus the Court **DENIES** Petitioner's motion for a certificate of appealability.

---

[15] Petitioner does not set forth any particular objection to this section of the Report.

**D. Petitioner's Request for an Evidentiary Hearing.**

Petitioner also requests an evidentiary hearing in these proceedings. [Doc. No. 16; Doc. No. 20, Traverse, at 9-10, 26.]

Section 2254(e) "substantially restricts the district court's discretion to grant an evidentiary hearing." *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999). It provides:

> If the applicant has failed to develop the factual basis for a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -
> (A) the claim relies on –
>> (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>> (ii)   a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Petitioner identifies the voir dire transcripts, and Carlos Pena's admission that he perjured himself at trial when he said that he was not the individual who placed the bag over Cesar Uribe's head while Uribe was being strangled to death, as evidence that was not presented to the state courts. [Doc. No. 20 at 31-70.] As the magistrate judge correctly noted, even assuming the allegations regarding Carlos Pena's admission of perjury are true, an evidentiary hearing is not required because the state court record provides an adequate basis to adjudicate his claims. [Doc. No. 25 at 96-97.] *See Campbell v Wood*, 18 F.3d 66, 679 (9th Cir. 1994) (evidentiary hearings are required when "the petitioner's allegations, if proved, would establish the right to relief" but are not required when allegations are "conclusory and wholly devoid of specifics" nor "on issues that can be resolved by reference to the state court record.") (internal citations omitted).

There is ample evidence in the record to suggest that Petitioner's conviction was based on more than just Pena's perjured testimony regarding which individual placed the

bag over Uribe's head. Regardless of who placed the bag over Uribe's head, Petitioner was identified by multiple witnesses as one of the individuals who kicked Uribe while he was being strangled to death. Additionally, since Petitioner was not accused of placing the bag over Uribe's head, whether it was Pena or Estrada-Gonzalez who covered Uribe's head would have had no discernable effect upon Petitioner's conviction. *See Beardslee v. Woodford,* 358 F.3d 560, 585-86 (9th Cir. 2004) (an evidentiary hearing is also not required if the claim presents a purely legal question, there are no disputed facts*; Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992) *(*an evidentiary hearing is not required if the state court has reliably found the relevant facts). Furthermore, Petitioner has not come forward with a new rule of constitutional law or established by clear and convincing evidence that no reasonable fact finder would have found him guilty. Thus, the Court concludes that evidence of Pena's perjury was not prejudicial and was unlikely to alter the jury's verdict. In addition, the Court agrees with the magistrate judge's finding that the voir dire transcripts are not necessary to address the *Batson* claim nor helpful to Petitioner. The Court therefore **DENIES** Petitioner's request for an evidentiary hearing.

**E. Petitioner's Request for Assistance of Counsel**

Along with his request for an evidentiary hearing, Petitioner requests appointment of counsel to assist him in these proceedings. [Doc. No. 16; Doc. No. 20 at 9-10, 26.]

18 U.S.C. § 3006A(a)(2)(B) provides that "[w]henever the United States magistrate or the court determines that the interests of justice so requires, representation may be provided for any financially eligible person who . . . (B) is seeking relief under section 2241 . . . ." The purpose of § 3006A is to provide for appointed counsel whenever required if failure to do so amounts to a denial of due process. *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986). Unless an evidentiary hearing is required, appointment of counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B) is in the discretion of the district court. *Terrovona v. Kincheloe*, 912 F.2d 1176, 1181-82 (9th Cir. 1990). In deciding whether to appoint counsel, the district court "must evaluate the likelihood of success on the merits as well as

the ability of petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

Here, there is no indication that appointment of counsel is necessary to prevent due process violations. *Chaney*, 801 F.2d at 1196. The Court has reviewed Petitioner's filings to date and agrees with the magistrate judge's finding that it appears that Petitioner has a good grasp of this case and the legal issues involved. [Doc. No. 25 at 98.] The Court, therefore, concludes that Petitioner is able to adequately articulate his position and appointment of counsel is simply not warranted by the interests of justice. Accordingly, the Court **DENIES** without prejudice Petitioner's motion for appointment of counsel.

## III.  CONCLUSION

In sum, Petitioner has not established that the appellate court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state courts. The Court hereby: (1) adopts the Report in full; (2) rejects Petitioner's objections; (3) denies the Petition for Writ of Habeas Corpus [Doc. No. 1] ; and (4) denies the motion for a certificate of appealability [Doc. No. 34].

Further, the Court hereby DENIES the Motion for Hearing and the Motion for Appointment of Counsel [Doc. No. 16.] and GRANTS the Motion to Exceed Page Limit [Doc. No. 36.]

It is **SO ORDERED**.

Dated:  January 8, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge